The United States Court of Appeals for the Ninth Circuit is now in session. Good afternoon. This is the time set for argument in the case of Erickson Productions v. Kast. Mr. Liu, you may proceed. Thank you, Judge Thomas. I may please the court. Jeff Liu for appellant Kraig Kast. I'd like to reserve three minutes of my time for rebuttal. This copyright case concerns three photos on the secondary pages of a developmental website that no one ever saw. For the web developer's direct infringement, another federal court already gave the plaintiffs a judgment worth around $11,000. But in this contributory infringement action, on a cold record, a magistrate judge who didn't even preside over Mr. Kast's initial trial deemed him willful and awarded maximum statutory damages worth $450,000. That award cannot stand for four reasons. That initial, uh, counsel, that initial award was to the website producer, right? Yes, in the direct infringement action, it was against the web developer. Yes. Okay, go ahead. And so there are four reasons that award can't stand. The first is that the magistrate judge violated Kast's seventh amendment rights by denying him a new jury trial on remand from this court's holding that instructional error painted the prior jury's willfulness finding. Second, even assuming the district court could have decided willfulness on a cold record, the court clearly erred by deeming Kast willful. This court's already said that several Kast actions suggest that he wasn't. Per the party's contract, Kast got licenses for photos he provided and he swiftly ordered the Erickson photos removed when he was asked. Third, the damages award in this case was 40 times the amount awarded against the direct infringer. That violates due process, or at least constitutes an abuse of discretion that warrants a reduction in the award. And finally, the record and the district court's opinion makes plain that the court exercised no discretion at all in awarding maximum damages. That's textbook abuse of discretion, and on that ground alone, the award has to be vacated. I welcome the court's questions, but unless the court directs me elsewhere, I'll start with the seventh amendment. On the merits, we think the seventh amendment violation in this case is clear as day. The seventh amendment preserves a jury right according to the rules of the common law, and Erickson doesn't dispute that a common law, a jury verdict that was erroneous with any issue, requires a new jury trial. And Erickson can't point you to one example, not one, that breaks from the uniform practice of jury trials on remand from appellate court holdings that the prior jury verdicts were tainted by prejudicial instructional error. So it's no surprise that their lead arguments here are concerns about the mandate rule and waiver. We don't think any of those arguments are availing. I guess let me start with the mandate rule. It's true that in two places in this court's opinion, it seemed to contemplate a remand on the existing record. Well, that's what we said. It wasn't just contemplating. That's what we said. Rightly or wrongly, that's what we said. Why do you think the magistrate judge was free to ignore that? Well, I think that on the record language has to be understood in light of the colloquy between Judge Hawkins and Erickson's counsel at the last argument. And so, Judge Hawkins, you'll recall, there was a question, if we find that the error was prejudicial, do you need more discovery to prove your case? Erickson's counsel says no. And so that's the genesis of the on the record language in the court's prior opinion. I don't think this court could have meant to sweep away cast Seventh Amendment rights on an issue that pertained to Erickson's need for additional discovery. Now, even if you don't buy that interpretation, Judge Thomas, I think the case law is clear that the mandate rule is not totally inflexible. This court said that in the Frashoa case. So the mandate rule is a species of the discretionary doctrine of law of the case and subject to an exception when the ruling is clearly erroneous or would result in a manifest injustice. In this case, the Seventh Amendment violation, Erickson doesn't have one good response on the merits. The courts have been uniformed on this, that on remand, a new jury trial is required if the error was prejudicial. I agree with you. That is indeed the typical situation because you've taken away not only one of the claims, but also the instruction, the error, which was respect to the intentional damages. But a question I had, so when it goes back to the trial court, and I recognize, I believe that Mr. Kast was pro se at that point. He put in his pretrial statement, basically saying that he would be fine with a bench trial. Is that considered a waiver of the jury trial right? I don't think so, Judge McKeown. Remember, Kast made a proper demand for a jury trial at the outset of this case to waive it under Rule 39. He has to follow stipulation in writing. It's important to understand what the case management conference was in context. It's a Heading 16. The heading was expedited trial. Kast was making an election between an expedited trial and a non-expedited trial. That's pursuant to a local rule in the Northern District of California, Rule 64, General Order 64. If the court looks at that order, it maybe has one reference to a bench trial. That's in the definition of what an expedited trial is, a trial before either a jury or appeal rights. It can't be that Kast made a knowing involuntary waiver of his right to jury when his concern in filling out that heading, Heading 16 on his case management conference statement, was to make an election between an expedited and non-expedited trial. He did say bench trial. That's the key element there. We understand he's pro se, but it wasn't just off the cuff. It was a written submission. Yes, Your Honor, but again, this court has to indulge every reasonable presumption against waiver. That's even putting aside the fact that he was pro se. Remember, he made a proper jury demand at the outset of this case. Judge Ryu, the magistrate judge, understood him to be requesting a jury trial, understood that statement to be requesting a jury trial. She denied it. She says, we're done. We don't think that one statement, that one straight statement in a multiple heading case management conference statement, and where he's making an election between expedited and non-expedited, expedited trial can be understood as a waiver, a knowing involuntary waiver of the jury right, indulging every reasonable presumption against waiver and considering pro se pleadings favorably in light of the pro se litigant. If we did not agree with your jury trial argument, but said that there needed to be a new trial because of their factual issues, that a magistrate judge or district court judge would have to address, would that be basically a bench trial? Is that your fallback position? Yes, our fallback position is that minimum there has to be a bench trial because this court couldn't have contemplated that a magistrate judge would decide credibility on a cold record when she didn't even preside over the initial trial. So yes, Judge McKeown, that is our fallback position. Now, if the court's not convinced that it has to vacate and remand on the Seventh Amendment ground, I think the court should outright reverse because the willfulness finding is clearly erroneous. And the standard here is whether the district court overlooked key facts or made implausible inferences. And the fulcrum of the district court's analysis in this case really was that Cass must have known the pictures came from Wells Fargo, that he had, quote, detailed familiarity with the website and those photos. But the record doesn't support that the court did two facts that the district court overlooked. One is, if you look at the record, there's one mention of the photos anywhere. It's in this January 4th email that the pictures need to be more casual. But in the very next sentence, the district court fails to credit this or even mention this. Cass says, I want to reuse as many photos as possible from the existing site. That's not what someone who's willfully violating a copyright would say, or someone who wants his web developer to go and copy and paste the photos from the Wells Fargo website. I think the second key inference is the fact that this report said Cass' entire focus was not on functionality and navigation, that Cass nowhere mentions functionality and navigation of other sites and that his entire focus was on the photos. That's wrong as well. There's a December 19th email where Cass explicitly mentions the navigation and the functionality of the Citibank website. He submitted a number of other websites to only websites as possible templates for only websites to design the site. Beyond that, the district court outright ignored or drew implausible inferences about the implications from Cass' contract with only websites. That contract language is clear. Cass was responsible for obtaining copyrights for photos he provided. He, in fact, obtained licenses for photos that he provided, whereas it was only websites responsibility to license their photos. So even if you grant the district court's presupposition, its assumption really, that Cass knew these photos came from Wells Fargo, there's no reason to believe that Cass didn't have a good faith, reasonable belief that they were not infringing because only websites had complied with its contractual duty to obtain licenses for those photos. Could the district court, I understand this is hypothetical, could the district court on receiving the mandate from our panel have said to the parties, file cross motions for summary judgment. The court of appeals has told me that this case should be decided based on the existing record. So file cross motions for summary judgment and I'll render a decision. Could he or she have done that? I think the district court could potentially order the parties to brief summary judgment, but that's judged under a different standard. I'm asking a hypothetical. Suppose irrespective of what the district court slash magistrate judge did here, could he or she have said file cross motions for summary judgment and I will follow the mandate of the court of appeals and decide this on the existing record. So tell me if there are material facts that preclude the entry of summary judgment on one side or on the other side while there are no issues of material fact. Could she have done that? So the supreme court has made clear the practice of summary judgment doesn't violate the jury. Is your answer a yes or a no? I think the court could do that. Yes, Judge Hawkins, but again, what's the difference? The difference is that it's judged under a different legal standard. If there's material facts that preclude summary judgment based on the existing record, it has to go to trial. And in fact, in this court, in the Friedman decision in 2016, said willfulness is generally a question that should not be decided on summary judgment. So it's possible that the court could order the district court to ask the parties to brief further summary judgment motions, but then the question is whether the record, whether drawing all inferences in favor of the non-movement they could have found against my client. It's under a totally different legal standard, one. And two, it would have to go to trial if there were material facts that precluded the entry of summary judgment. Suppose the district court had said, okay, I'll give you a bench trial. And your client said, oh, we've got a bunch of evidence we want to put in. The district court said, wait a minute, the court of appeals said decide this on the existing record. What would happen then? Well, the client, in that hypothetical, I think the question is what the client does next. If he accedes to a bench trial, that's different than if he objects and says, I want a jury trial. So I think that's one key distinction between that case and this one. If the court on remand simply ordered a new bench trial and the litigant affirmatively waives it, that's a different scenario than what happened in this case, which is, she said, I understand us to be having a jury trial, that you want a jury trial, but no, we're done. And I see I'm into my rebuttal time, but if I could say one quick word on damages before I reserve the balance of my time, we've got two overlapping paths that I think are well accepted to get you to limit the damages here. One is constitutional and one is non-constitutional. The damages award here was 40 times the amount entered against direct infringer. We think that's obviously unreasonable under the Williams standard. If the court wants to assess the factors, the amount of profits reaped, that's the licensing fee, 120 times the licensing fee under an abusive discretion standard. Financial benefit to Mr. Cast, none. This court has already said he didn't benefit from only websites infringement. The reprehensibility of the conduct, this court has already said that several of Cast's actions suggest that he wasn't. So we don't think either under a constitutional route or an abusive discretion standard, the damages award can stand. I'll reserve the balance of my time. Thank you, counsel. Mr. McCullen. Good afternoon, your honors. My name is Kevin McCullen. I represent Plaintiff Appellants Erickson Productions. May it please the court. I'd like to start my argument by touching on one comment that Mr. Liu made near the end of his argument. And that is, if Mr. Cast had objected to the order of a bench trial below, that would be a different situation than if he acceded to it and proceeded. The notion that Mr. Cast made an affirmative demand for a bench trial is clearly that Mr. Cast made a reference to preferring and demanding a bench trial in his case management statement. But the parties repeatedly briefed our position to the court. We had a hearing before Judge Ryu, Mr. Cast, all of his arguments, every single submission referred to this court should decide, this court should decide. The word jury doesn't appear in a single submission by Mr. Cast until he makes a motion for a new trial after Judge Ryu entered her order on willfulness against him. There's not one. Mr. McCullen, do you have any authority for the proposition that once you make a demand for a jury trial that you somehow have to renew it? Well, your honor, the demand for a jury trial was met. It was a jury trial. Well, yes, but the jury's verdict is basically vacated on damages. So the question is, do you have any authority that if you've made a demand for a jury trial that you somehow have to renew it in a remand situation? Well, I think I disagree with the premise here. No, I don't want to know whether you disagree with my premise. I'm asking you and you can argue. Do you have any authority one way or the other on this point? No, I think that the situation here that is presented is much more akin to a situation where you have a court of appeals that finds an instruction to be erroneous and then conducts a harmless error review. Here, the court referred a mandate to the district court. There is no situation. We determined it was not harmless error, in fact. There's no, in the prior opinion, there is no determination that the error was not harmless. The court says it is likely prejudicial and refers back, but then specifically says with respect to Mr. Cass' demand for a directed verdict, that the record does not present only one view and asks the district court to review on the existing record. That is as clear as could be for us to have one inescapable conclusion. That is that the district court is bound by the mandate that the remand is limited to the existing record and there would be no situation where there would or ability to assert a right for a jury trial. Why wouldn't the existing record mean no more discovery? We've already been through discovery. We've had a trial. End of story for evidence. The court did not deny, the court of appeals order didn't say that there would be no discovery and that's not the question that was asked during oral argument at all. The question was not, are you going to ask for more discovery? I made that comment. Instead, the question was, are you going, when it's remanded below, are you going to make a presentation on the existing record? That's the language of the question and that's exactly what appears in the order twice. The question is not whether or not you'd have mere new discovery, documentary discovery, new subpoenas, new depositions. We have witness on the record that was the jury trial. We have all of that cross-examination. You have the direct. You have the redirect. That is the record. Okay, but let me ask you this. What's troublesome about that interpretation is if that record includes conflicting facts or facts, material facts that have not been stipulated to, why wouldn't the judge then revert to at least a bench trial and making those determinations as opposed to some other approach? The question in that situation, as you pose it, would be that the court below would do a full review, essentially a summary judgment review, and if it doesn't grant summary judgment, then it would then go to a bench trial. I don't believe that that would be the proper procedural course for the district court to take. The analysis that the court was directed to by mandate was to determine whether or not the erroneous jury instruction caused harm, and the court below conducted that review on the existing record. Of course, the jury trial contains some discrepancies. That's why summary judgment was not granted below. However, the development of in that courtroom knew 100% that Mr. Kast was going to have liability and willfulness found against him. Let me follow up on a question that Judge McCune asked. Does the existing record tell us whether the website provider, producer, was told by Kast to put these images up? Do we know that one way or the other? Yes, we do. We know definitively that Mr. Kast instructed only websites to put these photos on there. I will say, if you look at the full record, and we note this at the jury trial, it's in the transcript, Mr. Kast failed to produce three weeks of emails right around the time the website was published. When he sent his pre-development package to the website developer, he didn't merely refer to navigation and drop-down tools. He sent links to the specific pages of the Wells Fargo website, and he said, I like the look and feel of these. Then Only Websites develops a website for him with different photos. Mr. Kast, that was the contract with Only Websites. Not that they provided unlimited photos, but that they would provide five, which they did. Mr. Kast emails back and says, I don't like this photo. It should look more like the Wells Fargo page. Then moments later, sends a hyperlink to the exact page that he wants copied. Then he is provided a link to his own website for three months before it's launched. Three months, he has access to that, and he changed the content. In fact, he repeatedly says, I will handle the photos. The photos are my responsibility. Mr. Kast also says, I am responsible for the content, meaning the language that's on the page. But there's never a single email where Mr. Kast sends the type that he wants, the language, the drop-down, the words, none of that. That's because he has control of his own website. He has an access to the website. He later sent dozens and dozens and dozens of emails with things that he wants changed in terms of navigation tools, and never once, not once, says a single thing about changing the photos. Yet at trial, Mr. Kast outright lied multiple times. He says, I didn't know these photos came from the Wells Fargo page. I didn't even like these. I told them to change it multiple times. I thought they had changed it. We confronted him repeatedly on this, and I pointed out all of this to the jury in closing. The jury, and let me skip ahead a little bit to damages, because I think it's very important to understand. Before you go to damages, your friend on the other side makes the point that this is a different judge that heard after remand than the one that heard it before the jury, correct? Is he correct? Yeah, Judge Lloyd, the presider of the trial, and Judge Rye, he was assigned later. But the infringement occurred in 2011. It's 12 years later. The remand came eight years after the infringement and four years after the jury trial. So the notion that Judge Lloyd would have been in a better position to recall the facial expressions of Mr. Kast is, I think, a far stretch. The cold record is there in black and white transcript, and there's no need to judge Mr. Kast's credibility based on facial expression. You can look at the record and see he is outright lying to the jury. And that is exactly why the jury entered a maximum damages award. The jury wasn't aware of how much Only Websites had the default award, and it would be improper for this court to compare that award, because that's a default situation. And the purpose of statutory damages includes punishment. It includes to deter people from doing exactly this. And Mr. Kast said this, and Only Websites did. We went to them and we sent a cease and desist demand. Only Websites took the photos off of the website, and Mr. Kast sent repeated emails to us filled with lies, saying, I'm going to contact all the people I know in the Bay Area. We will attempt to damage Erickson's business. We will have a boycott. Confronted by that on the stand, he admitted it was a lie that he made up to try to deter Erickson from pursuing its claims. Only Websites merely didn't show up to the courtroom and defaulted. Mr. Kast said he would drag the case out, and here we are, 12 years later. That is an astonishing fact. Mr. Kast has done exactly what he threatened to do, and that is why he was punished much more severely than Only Websites. Also, Mr. Lew wants to compare the jury award to just the lawful license. Only Websites, wasn't that a settlement? No. Well, we ended up settling the case, but what Mr. Lew refers to is to the default award. We got more from Only Websites than we did in the default award because of the settlement. So the comparison between a default award by the district court and what was awarded in this case, there's no reason for that comparison. There's not a single case saying that it's relevant, you know, what amount was given to different infringers at all. Moreover, the analysis that Mr. Lew presents that the award is 20 times the lost licensing fees ignores the other evidence in the case. 504B says that there is actual damages include your lost licensing fees and actual damages. Sorry, actual damages and profits attributable. Lost licensing fees are one aspect of actual damages. Jesse Hughes, the marketing director for Erickson testified that Mr. Cass conduct. It wasn't a website that no one saw. Wells Fargo saw it. Wells Fargo terminated business that had given Erickson over $100,000. So we presented testimony for the second. Didn't we find that at least one of the jury instructions in the trial was erroneous on the issue of willfulness? Well, yes, on the issue of willfulness, but on the issue of damages, the financial benefit is one aspect of 504B. The other aspect is actual damages. So to compare the jury award to the actual damage evidence that was at trial, it's barely three times. Erickson testified, Jesse Hughes testified on behalf of Erickson that the damage to Erickson's business was well in excess of $100,000. That Mr. Cass conduct cost them their biggest client in the banking industry. Mr. Cass knew what he was doing, was aware of what he was doing. He tried to have a pirate website. He tried to trick people into thinking that Atherton Trust was a legitimate banking private wealth management fund, and it wasn't. He tried to piggyback on a Wells Fargo website that was well known in the Bay Area, and it failed. It failed because he got caught. But the damage it did to Erickson's business in the Bay Area was substantial. There's nothing in the record that is contradictory to that. Moreover, the jury's analysis on statutory damages is not a grieved party, but instead includes the need to punish the infringer and deter future conduct by future infringers. That is a key component. Mr. Cass dragged the case out, cost us hundreds of thousands of dollars in attorney's fees, went to a trial, stood on the stand, and outright lied to the jury for an entire afternoon. The jury was well positioned to have punished Mr. Cass the way that it did, and there's no easy process. Yes, Your Honor. To take the basic elements of the trial and the disputed issues coming to us, ordinarily, if we find that a jury was improperly instructed on an issue that bears on willfulness, wouldn't the ordinary remedy be to send it back for a new trial? Well, Your Honor, I think that the ordinary remedy would be for the court to first, as the decision in Castillo-Mendez says, that it must, the court must determine if there was harmless error. And that requires an analysis of the factual record, the complete factual record. This court did not do that at all. We briefed the issue of harmless error extensively with references to the jury transcript, and not one line in this court's order touches on that. Instead, what this court did, which I think is entirely proper, was to say, this is an issue that we can have the district court do. We can have the district court on the existing record, parse through the transcript, parse through the evidence, and say, was this my, because remember, there are three prongs to willfulness. One of them was erroneous. One, the jury very well could have fined recklessness and willful blindness. And that's exactly what Judge Ryu did. She parsed the record and said, there is clear recklessness or willful blindness here. There could be no other interpretation of the record. And unless there's a- My questions are taking you over your time. Thank you for your responses. Thank you, counsel. We'll hear about it. Three quick points, Your Honor. One on the jury trial right. Judge Hawkins, you're exactly right. The ordinary rule on instructional error is a remand for a new trial. And that's not simply the ordinary rule, but it's constitutionally required by the Seventh Amendment. I didn't hear my friend say one word about the merits of the Seventh Amendment argument. Second, on the record, Mr. McCullough says that the record clearly reveals that Mr. Kast told websites to copy the Wells Fargo photos. There's nothing in the record that reveals that. I think Mr. McCullough's efforts to relitigate the trial record just shows that it is a disputed fact. And on that point, I want to go back to Judge Hawkins' question about whether it could be remanded for a summary judgment decision. I think I heard my friend, Mr. McCullough say, this is exactly why the summary judgment motions were denied the last time around, because there were disputed issues of fact. And of course, the standard on summary judgment briefing would be whether, drawing all inferences in Mr. Kast's non-movement's favor, whether the record compels a showing of willfulness. If there's a disputed fact, it has to go to a jury. Let me ask you, Mr. Liu, if you got your wish and there were a jury trial and the jury determines willfulness, you've then, I assume, opened your client up to further attorney's fees, correct? Erickson could certainly move for further attorney's fees. Yes, and there's nothing precluding them from doing that, but we think we would prevail in a new jury trial. And the degree of success is a key factor in determining the amount of the attorney's fees. Judge McCune is simply asking you, I think, have you advised your client if you get what you want, that they're going to be exposed to potentially additional attorney's fees? Yes, yes, Judge Hawkins. I think if Mr. McCullough, if it goes back to a new jury trial and the jury finds willfulness, the attorney's fee issue has to be re-litigated. Yes, that is a risk. Thank you, Judge Laker. Your time has expired and the case just argued will be submitted for decision. Thank you both for your arguments this afternoon. They're helpful to the court and we'll be in recess. Thank you. This court for this session stands adjourned.
judges: HAWKINS, THOMAS, McKEOWN